UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GEORGE J. SAAD, et al., ) | Case No. 1:03CV2557 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| GE HFS HOLDINGS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| GE HFS HOLDINGS, INC., ) | JUDGE ANN ALDRICH |
| ) | |
| Counterclaimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| GEORGE J. SAAD, et al., ) | |
| ) | |
| Counterdefendants. ) | MEMORANDUM AND ORDER |

This matter is before the court on GE HFS Holdings, Inc.'s ("GE"), motion for summary judgment (Doc. No. 67) on its counter-claim against George Saad ("Dr. Saad"), Nour Management Company ("Nour"), Deaconess Radiological Services, Inc. ("DRS"), and Deaconess Emergency Room Services, Inc. ("DERS") (collectively, Nour, DRS and DERS are referred to as "the Plaintiff Companies," and with Dr. Saad as "the Counterclaim Defendants"). On February 26, 2007, the Counterclaim Defendants filed a response (Doc. No. 75)[1], and on March 13, 2007, GE filed a reply (Doc. No. 78). While the motion was pending, the Counterclaim Defendants filed a motion to strike

---

[1] The court hereby grants *nunc pro tunc* the Counterclaim Defendants extension of time to respond to GE's motion for summary judgment until February 26, 2007 as of January 24, 2007 (Doc. No. 73).

(Doc. No. 77) the statement of undisputed material facts (Doc. No. 49) filed by GE with its motion for summary judgment. In turn, GE filed a motion to strike (Doc. No. 80) certain documents (attachments to Doc. No. 75) filed with the Counterclaim Defendants' opposition to GE's motion for summary judgment. For the following reasons, the Counterclaim Defendants' motion to strike is denied, GE's motion to strike is denied, and its motion for summary judgment is denied.

## I. Background

After Deaconess Hospital ("the hospital") filed for bankruptcy, Dr. Saad created a new Deaconess Hospital LLC ("Deaconess"), which entered into a Loan Agreement with GE so that it could purchase all of the hospital's assets. Deaconess, Pearlview Square Inc. ("Pearlview"), and Indoga, Inc. ("Indoga") (collectively, Deaconess, Pearlview, and Indoga are referred to as "the Debtor Companies") were provided a $3,000,000 revolving line of credit, which was later increased to $4,500,000, that was secured by property owned by Pearlview and a personal guarantee by Dr. Saad of $750,000. The Plaintiff Companies, affiliated with the Debtor Companies because all were owned by Dr. Saad (collectively, Plaintiff Companies and Debtor Companies are referred to as "the Borrowers"), were also made borrowers under the Loan Agreement when they provided GE with a security interest in their accounts and accounts receivable.

Despite efforts by Dr. Saad, the hospital generated operating losses and the Debtor Companies filed for bankruptcy. GE and the Debtors Companies disagreed on the amount of indebtedness on the petition date. In resolving this dispute, the bankruptcy court approved a settlement that provided GE a secured claim of $4,250,000, which included principle, interest, and attorneys' fees as of the proposed settlement date. After the bankruptcy petition was filed, the bankruptcy court approved an emergency stipulation ("the DIP Order") so that Deaconess could obtain an additional $250,000 from GE to pay

for the hospital's operating expenses, which was conditioned upon a re-commitment by Dr. Saad to personally guarantee the debt up to $1,000,000. GE did not provide the post-petition financing and the hospital was forced to cease operations.

The Debtor Companies paid GE $3,500,000 pursuant to the bankruptcy settlement. There was a payment of $350,000 shortly thereafter. The settlement also provided that GE would agree not to seek recovery of the remaining $400,000 ("the carve out"), which would be paid to estate professionals to satisfy GE's obligations to Bank One, who provided the post-petition financing. The bankruptcy court approved the carve out because it came from GE's collateral rather than from property of the Debtor Companies' estates.

GE, however, did not agree that the carve out constituted a payment of the remaining indebtedness, and it declared the other Borrowers (the Plaintiff Companies) in default of their obligations, delivering a demand letter to Dr. Saad to pay the full amount of his personal guarantee. GE seeks the $400,000 remaining indebtedness against the Plaintiff Companies, and $1,361,388.10 in interest indebtedness, attorneys' fees, and costs, from the Debtor Companies, $1,000,000 of which is personally guaranteed by Saad.

## II. The Counterclaim Defendants' Motion to Strike

It is the burden of the party moving to strike to show the inadmissibility of each piece of evidence offered by the non-movant, setting forth specific evidentiary objections. *Hardin v. Reliance Trust Co.,* No. 1:04 CV 2079, 2006 WL 2850457, slip op., at *1 (N.D. Ohio Sept. 29, 2006) (citation omitted). The counterclaim defendants fail to carry this burden. Although their motion proceeds, paragraph-by-paragraph, to "object to and deny" many of the statements of undisputed material facts

("SOF") made by GE, it does not provide citations to the record or any other evidence to support the argument that the SOF is mere allegation. Therefore, the motion to strike the SOF is denied.

In its objection, GE argues that the counterclaim defendants "merely made the same kind of bare denials to facts stated in the SOF that one might see in an answer to a complaint." While this is largely true, the SOF itself is not a purely objective statement of the facts, but often contains the kinds of allegations and arguments one might see in an initial complaint. Therefore, although the SOF has not been stricken from the record, the court does not find it dispositive on the question of whether a material issue remains to defeat GE's motion for summary judgment on the counter-claim. Instead, the court will fairly consider all Rule 56(e) evidence in the record and disregard any inadmissible or otherwise inappropriate evidence.

### III.  GE's Motion to Strike

The Sixth Circuit has held that "a party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Sperle v. Mich. Dep't of Corr.,* 297 F.3d 483, 495 (6th Cir. 2002) (citation omitted); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1189 (6th Cir. 1997) (citation omitted) (holding that hearsay and irrelevant evidence must be discarded). GE relies heavily upon the Federal Rules of Evidence in arguing that most of the first Saad Affidavit (Exhibit A), the entire DeMarco Affidavit (Exhibit B), and the entire second Saad Affidavit (Exhibit E) should be stricken. The court finds it unnecessary to strike from the record this evidence while considering the motion for summary judgment, because the court is already restrained by the Sixth Circuit precedent, which provides that the court may only consider valid Rule 56 evidence when determining whether a genuine issue of material fact exists. The motion to strike is denied, but the arguments of inadmissibility will be fairly considered.

Dr. Saad's and Daniel DeMarco's attempts to characterize documents already in the record are parol evidence, which this court has already ruled as inadmissible in this case (Doc. No. 64). Therefore, the court will not consider the DeMarco Affidavit and the second Saad Affidavit in deciding this motion for summary judgment. Similarly, the following paragraphs of the first Saad Affidavit may not be considered under Rule 56: 5, 6, 7, 18, 19, 20, and 22. Additionally, the following paragraphs of the first Saad Affidavit are inadmissible because they are not the best evidence: 4, 8, 9, 10, 11, 13, 21, and 28. The portions of the first Saad Affidavit challenged as irrelevant or lacking foundation may be considered by the court while deciding whether a genuine issue of material fact remains, if they are rendered relevant or achieve a foundation when viewed with other evidence in the record.

### IV.  GE's Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and *that the moving party is entitled to a judgment as a matter of law*." Fed. R. Civ. P. 56(c) (emphasis added). The moving party bears the initial burden of presenting affirmative evidence negating an element of the non-movant's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 451 (6th Cir. 2004). While all reasonable factual inferences must be drawn in favor of the non-movant, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The non-movant has the burden to present more than a mere scintilla of evidence, "rather, there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252. The court must decide whether

the $400,000 carve out satisfied the Borrowers' remaining debt obligation to GE as a matter of law. The court finds, on these largely undisputed facts, that it did.

**A. The Remaining Indebtedness**

After the Borrowers defaulted on their repayment obligation under the Loan Agreement, the bankruptcy court accepted the trustee's evaluation that GE had a claim of $4,250,000, and the court accepts this determination. Some of the Borrowers (the Debtor Companies) paid off most of the debt pursuant to an approved settlement. After these repayments, there remained a $400,000 indebtedness, but GE agreed to carve out this amount, to which it would otherwise be entitled, to pay estate professionals. GE now seeks to recover from the other Borrowers (the Plaintiff Companies) the remaining indebtedness, together with the fees and costs accrued in securing it.

"Creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including to share them with other creditors." *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1313 (1st Cir. 1993) (citation omitted). The court finds that, based upon the bankruptcy court's approval of the settlement, GE was constructively paid the remaining indebtedness and voluntarily agreed to the carve out, as it would satisfy GE's own obligations to third-parties. GE argues, however, that the carved out funds were not paid to GE and were instead taken from the bankruptcy estate directly. If GE were to prevail on this argument, the approval of the settlement would have to be upset for violation of creditor priority rights. *In re Ben Franklin Retail Store, Inc.,* 210 B.R. 315 (Bankr. N.D. Ill. 1997) (rejecting a proposed agreement to reorder creditors to allow estate professionals to recover before a secured creditor).

GE explained to the bankruptcy court that it would restate the proposed settlement to provide that all of the challenged funds would go to GE, which would distribute them as the fees were allowed,

if necessary. The bankruptcy court found this an unnecessary change and approved the settlement because it did not violate the bankruptcy code's distributive priorities. To wit, the proposed settlement provided, in relevant part, that

> After the GE Creditors receive payments totaling $3,850,000.00, they will covenant not to seek recovery from any other assets of the estate and will agree that $400,000.00 in assets that they would otherwise claim as collateral for their allowed claim will be used in this manner:
> (A) The existing carve-out for the committee's allowed administrative expenses will be increased so that the total carve-out will be $60,000.00.
> (B) Bank One will receive $340,000.00 on account of its secured claim . . .
> (6) The trustee, Bank One, and the committee will release the GE Creditors from all claims and will dismiss with prejudice all litigation against the GE Creditors.

(Doc. No. 49, Exhibit 30).

Accordingly, the court finds that GE was constructively paid the remaining indebtedness and voluntarily bargained for the carve out. Therefore, the Borrowers repaid their debt under the Loan Agreement, and the Plaintiff Companies have no remaining obligations to GE. While there is no genuine issue of material fact, judgment as a matter of law is inappropriate and the motion for summary judgment is denied.

**B. Attorneys' Fees**

GE's counterclaim also includes a claim for attorneys' fees and other costs associated with its enforcement of its creditor rights under the Loan Agreement and related documents. The court finds that the parties have inadequately briefed this issue, especially in light of the court's decision that GE is not entitled to the debt repayment that was the subject of the disputes giving rise to the fees and costs. Therefore, the parties are instructed to brief the court on the availability of the fees and costs, as provided by the language of the Loan Agreement, with reference to the rights of the parties as expressed in this memorandum. GE is further instructed to provide a more itemized and detailed

explanation of the alleged fees and costs accrued, with reference to the appropriate legal community, so that the court may determine the reasonableness of those fees and costs. GE is ordered to brief the court on this by September 14, 2007. The Counterclaim Defendants will file a response by September 28, 2007. GE will file its reply by October 12, 2007.

### IV. Conclusion

For the foregoing reasons, the court denies both motions to strike and GE's motion for summary judgment. Therefore, the Counterclaim Defendants' motion for a Fed. R. Civ. P. 26(f) conference, or scheduling conference (Doc. No. 66) is denied as moot. A scheduling conference is set for October 26, 2007 at 1:30 p.m. in Chambers 17b.

IT IS SO ORDERED.

*/s/Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

Dated: August 16, 2007